[No. 15345. Department Two. June 12, 1919.]

## J. G. Raley, *Appellant,* v. Schram & Ware, *Respondent.*[1]

Guaranty (9)—Construction—Agency Contract—Scope and Extent of Liability. There was no sale by the agent, within the meaning of an agency contract for the sale of goods whereby the agent guaranteed credits extended, where the agency contract forbade credit exceeding $1,500, and required the agent to recoup the principal for all losses in excess of three-fourths of one per cent, and it appears that, upon the agent's request for authority to make a ."close out sale" to a certain customer greatly exceeding the credit limitation, the principal held the matter up pending its own investigation of the credit and finally wired the agent to deliver the goods.

Appeal from a judgment of the superior court for King county, Ronald, J., entered October 26, 1918, upon findings in favor of the defendant, in an action on contract, tried to the court. Affirmed.

*Gill, Hoyt & Frye, Walter Schaffner,* and *R. L. Blewett,* for appellant.

*J. P. Wall,* for respondent.

Holcomb, C. J.—On December 1, 1909, the Marion Iron and Brass Bed Company, an Indiana corporation, contracted with the Manufacturer's Distributing Com-

[1]Reported in 181 Pac. 867.

pany, a domestic corporation, by which the latter became agents of the former in the distribution of the former's product. The principal agreed to pay its agent fifteen per cent commission on sales. As to the terms at which sales might be made by an agent, the agreement provided that the agent should follow instructions sent it from time to time as to such terms of sale; that no sale should be made below the list price unless expressly authorized; that the basis of credit was to be the ratings contained in the latest published book of the Bradstreet Mercantile Agency; that credit in excess of the sum of $1,500 could not be extended to any one customer; and that the agent would pay to its principal all losses in excess of three-fourths of one per cent sustained by the principal.

In May, 1911, there was an accumulation of about four hundred beds in the warehouse of the agent, these being the property of the principal, awaiting disposal in the course of trade. At that time the Grand Rapids Furniture Agency of Seattle was about to open a retail furniture business in Seattle and was approached by the Manufacturer's Distributing Company with a view to the sale of the four hundred beds then on hand. The result of those negotiations was that, on May 5, 1918, the Distributing Company (as we will call the Manufacturer's Distributing Company) telegraphed the Marion Iron and Brass Bed Company calling attention to the opening of the Grand Rapids Agency's store and asking that a special price be put upon the stock of beds owned by the Marion Iron and Brass Bed Company in the Distributing Company's warehouse so that a "close out" sale of the entire stock to the proposed new concern might be made. To this the Marion Company answered: "Cut ten per cent if absolutely necessary account clearing up stock."

May 18, 1911, the Distributing Company reported by letter as follows:

"We have closed a deal with the Grand Rapids Furniture Agency of this city, a new firm just opening up, on the entire lot of iron beds in Seattle stock. Terms one-third net September, October and November 1st. They hope to open some time next month or probably not until July 1st."

May 29, 1911, the Marion Company replied to this letter:

"Please furnish us all the information you can possibly secure relative to the Grand Rapids Furniture Agency, to whom you have sold the Seattle stock. As this is a new concern we would like to get a line on their credit standing before making delivery of beds to them. We have asked the Dun agency for a special report on them."

May 31; telegram of Distributing Company to Marion Company:

"See our letter of the eighteenth [above]. Have you secured rating to warrant us delivery entire shipment. We believe account OK. Wire at once."

June 1; reply telegram of Marion Company to Distributing Company:

"Have wired for rating dont deliver goods until we instruct."

June 2; telegram from Marion Company to Distributing Company:

"Dun wires no rating assigned you see local representatives of Duns and when satisfactory rating for this amount of credit is assigned deliver stock."

No further communications appear to have been exchanged by these parties until June 9, when the Marion Company wired the Distributing Company: "Deliver stock to Grand Rapids Furniture Agency."

Obeying this instruction, the beds were accordingly delivered to the Grand Rapids Company by the Distributing Company. On June 12, certain of the principal stockholders of the Grand Rapids Furniture Agency entered into a written guarantee of the Grand Rapids account, which guarantee was forwarded by the Distributing Company to the Marion Company.

The question as to whether this was a sale by the principal, the Marion Company, or by the agent, the Distributing Company, to the Grand Rapids Furniture Agency arose by reason of the bankruptcy of the Grand Rapids Furniture Agency while still a debtor of the bed company. In the bankruptcy proceedings, the Marion Company secured a portion of its claim, and thereafter sued the Distributing Company for the balance between the sale price and the sum recovered from the trustee, basing such action upon the clause of the contract of agency stipulating that the agent should recoup the principal for losses in excess of three-fourths of one per cent on the total sales. The Distributing Company denied that this was a sale within the terms of the agency contract, the principal itself having assumed the responsibility of determining the financial status of the prospective purchaser, and denied making the sale or extending any credit to the purchaser, within the meaning of the contract of agency between the parties.

Trial without a jury resulted in judgment for the Distributing Company. The appellant here asks us to reverse the result reached by the trial court and find that such sale was made by the agent as would obligate it to the principal within the loss guarantee clause of its agreement.

This we are unable to do as a conclusion from the facts which we have reviewed above. It is clear to us, as it apparently was to the trial court, that the ex-

change of correspondence preceding the sale to the Grand Rapids Furniture Agency amounted to the extension of credit to that concern by the Marion Iron and Brass Bed Company and not by the Manufacturer's Distributing Company. That this was not a sale, within the terms of the agency agreement, is obvious from the fact that the amount of merchandise sold to the Grand Rapids Furniture Agency was much in excess of the credit limitation of $1,500 in the contract; beyond this sum, as we have noticed, the agreement expressly provided that the agent should have no authority to extend credit. By the principal's action in accepting an account in excess of that sum, knowingly, and after diligent inquiry into the prospective purchaser's financial responsibility, we are impelled to hold that the sale in question was one which, although originally an incident of the parties' relationship, was not within the terms of the agency contract to the extent of obligating the agent for the losses sustained by the principal in the transaction.

The judgment is affirmed.

MOUNT, FULLERTON, and PARKER, JJ., concur.